Case number 21-3005. United States of America versus Lorenzo Turner appellants. Ms. Wright for the appellant, Ms. Colu for the appellate. Ms. Wright, good morning and it's really good to see you. It's good to see an old hand. Thank you. All of us, it's a whole panel. Hi Ms. Wright, how are you? I'm good, thank you. Good morning, may it please the court. Lisa Wright for Mr. Lorenzo Turner. I'd like to reserve two minutes for rebuttal. This case does not involve a court's authority to impose consecutive sentences on revocation of supervised release, nor does it involve the court's authority to impose a sentence above the revocation guideline range. Clearly a court can do that so long as it recognizes that it is varied from the range and gives a sufficient reason for doing so. Rather the issue here is what is the guideline range? How is it calculated when there are multiple terms of supervised release and each was violated by identical conduct? The government contends that the guideline range in the Chapter 7 table essentially represents a per count range and may be imposed either consecutively or concurrently as the judge chooses without exceeding the range. But what we have to remember is that in promulgating the guidelines, the Sentencing Commission made the policy choice to look behind the form of the charges and to the substance of the actual conduct and to come up with a range that was applicable to all conduct. So that's always the way the guidelines work. You figure out what the conduct is. There may be different groups of conduct that are like counts that work together. And then together, even if there's multiple groups, you still come up with one number that is the total punishment that goes on each count. And so the history and purpose of structure of the guidelines, as well as the specific text of the Chapter 7, make clear that the range that's provided in the Chapter 7 table is the recommended total punishment for all the violation conduct. And because the same conduct created the same breach of trust for all the counts here, for purposes of figuring the defendant's guideline range, the Sentencing Commission has provided the same advisory range whether a defendant has one term of supervised release or, you know, 50 or 100 terms of supervised release. You don't doubt that the trial judge has the authority in the sentencing to use consecutive as opposed to concurrent on the release, supervised release. On the revocation sentence? Yep, on the revocation sentence. It certainly has a statutory authority to stack the sentences, but they may need to give a reason to vary over the guideline range. It's really odd to say that a judge has the authority to do that, that is to elect for consecutive, but must sentence as if concurrent. And which explains, and I think that's the bottom explanation for why every circuit has gone, you're right, I happen to agree with Judge Berzon, it doesn't make a lot of sense, so maybe I'm kind of agreeing with you, it doesn't seem to make a lot of sense, but the problem is for us to run up against six, seven circuits, all of whom have said, look, the trial judge can go consecutive. Smith doesn't help you because Smith took it the other way, so they end up with a result that looks favorable to you. It's not really favorable in terms of the law, they just use an approach that works for you, but every other circuit has gone the other way. It'd be very rare for us to say, now we're going to, when you admit that the statute allows consecutive sentences. But, I mean, the guideline is overlaid on top of the statute, it's a whole separate structure. The truth is the guideline doesn't tell us how to answer this question, and it really is an oddity to say a judge can have consecutive sentences or concurrent, and if the judge chooses consecutive, the judge is then bound to sentence as if it's concurrent. And it makes sense, because that's what you're essentially saying, the judge can pick consecutive sentences, but must sentence as if they're concurrent. I'm saying the statutory max is the statutory max of each one stacked on top of the other. First of all, we're just, we're conceding that for purposes of this appeal, that it's this, that the statutory max is that, but just as in ordinary sentencing and, you know, the first time around for imprisonment, there's many, you can always stack everyone's statutory max up to 100 years. The question is, what's the guideline range? And all we're saying is this is outside the guideline range, which is just a totally different question, and I would suggest that, like, the, I would, I guess, point the court to the, you know, the, when you deal with multiple counts under the guidelines, I guess it's chapter, well, chapter five, we talked about the probation officer ultimately did point to that and say the total punishment, but if you look at the multiple count provision, which is 3D, multiple counts, it's very clear that the, that what they're trying to do in the guidelines is, quote, provide rules for determining a single offense level that encompasses all the counts of which the defendant is convicted, and the introductory commentary says, in order to limit the significance of the formal charging decision and prevent multiple punishments for substantially identical offense conduct, this part provides rules for grouping offenses together. In essence, counts that are grouped together are treated as constituting a single offense, and conduct violating multiple terms of supervised release, I'm arguing now, is exactly the sort of conduct the guidelines treat as a single offense, because they say, quote, all counts involving substantially the same harm shall be grouped together into a single group. The guidelines look at the conduct, not the counts. They look at the substance, not the form. I mean, I don't, I just. Why, why, why are six or seven circuits all going the other way? They're answering a totally different question about. But the result, well, let's assume you're right on that, that, that there's murky thinking and different questions. The result is exactly the opposite of what you're urging. And not one single circuit, even Judge Berzon, who's totally in your corner, says, I can't get there, because there is statutory authority for a trial judge to sentence consecutively or concurrently. And what she's If you, if you choose to do it consecutively, it makes sense that you would put a sentence on each one of those offenses that has been pulled out and is now looked at consecutively. If it's concurrent, then you get the kind of result that you want. So, and the problem is the law, at least as every circuit has seen it, is the judge has the option to go either way. Every circuit has seen it this way. For statutory max purposes, and I guess I would urge the court not to focus on concurrent consecutive but focus on- Well, but I don't know how to do it otherwise, because you end up with the irony in your approach, you end up with an ironic situation where a judge has the authority to sentence consecutively. And if that is the case, it seems to me perfectly plausible that the judge has the right to put a sentence, the guidelines sentence on each one of those counts that's there. And that's what every circuit has done. But that's not how the guidelines work. Except the guidelines, I wish the guidelines gave an answer to that question. They don't. Well, that's why every circuit, and I'm going to stop and let you answer, every circuit has said, no, you got to go to the statute and the statute allows the judge to do this. The guidelines weren't at issue in any of those cases. And I suspect it's because the judges gave reasons. And so the defense attorneys in those cases didn't make the argument I'm making. I'm making a completely different argument. Oh, no. As a matter of fact, in a couple of, you know this as well as I do, in a couple of those decisions, the judge made it very clear that this is a within guidelines. They were all saying this is within guideline. Well, I think- It's consecutive, the within guideline refers to each count. That's what they're saying. Well, there was one where the district judge did say that, but that issue was not raised on appeal. And- Oh, I think they're one or two circuits. And then in Badgett- And I think that's exactly what Judge Burzon is saying in essence. They're within guideline, even though she thinks it's completely crazy. Well, in Badgett was the only case I saw where an appellate court said, this is a wrong guideline. They relied on 7E1.1F, I believe it is, that is talking not about multiple counts at the same time, but saying you're to make it consecutive with any sentence you're already serving. So that was just a mistake by the fifth circuit. That's just clearly wrong. And that's the same mistake the probation officer made at the beginning that got the judge here confused and got off on the wrong foot with focusing on consecutive or that the commission has set here. And they've come up with a table that asks for you to look at it by violation. And they've said very clearly in chapter three, that you group counts with the same harm together as one group and one offense essentially. And the harm here is the same. It's the same breach of trust, whether you have 10 counts or two counts or what have you. So I guess to me, it's perfectly analogous to the way the guidelines overlay on top of the ordinary statutory maximums. And I really think that we got off on the wrong foot below with the consecutive concurrent question, which we wouldn't actually disagree that the judge could have given six plus six consecutive and we wouldn't be appealing that. We don't have a problem with the concept of consecutive sentencing. It's just that the total punishment has to stay within the range or you just have to give a reason. And we don't have a problem with going over the 12. If you just- So your key terms is just that the total punishment. And that isn't normally the way you look at sentencing when you're doing, if you can sentence consecutively. Well, that is the way the guidelines are set up entirely. They made that choice to not look at it count by count, but to say, let's group together everything with like harm and treat it as one thing. And we're going to come up with one punishment. So if you have a gun and drugs, the gun is an offense characteristic for the drug. So it meets the requirement to be grouped with the gun. So at the end of the day, you end up with a giant range that applies to both those together. And it goes on to both of them. That's just the way the guideline, the choice, the commission made. And in that situation, can you sentence consecutively? You're not supposed to under 5G 1.2. In the hypothetical you just gave, the gun and drugs, can you sentence consecutively? You can, but you can't- And that means that you're going to get a different sentence for the drugs and for the gun, right? No, because what you're- No? Well, I'm saying, say the range is 150 is the top of the range and the judge wants to give the top range. The judge is supposed to under 5G give one, well, say it's 120 because that's the statutory maximum for the gun. The judge wants to give 120. The range is 120. This judge under 5G 1.2 is supposed to give 120 plus 120 concurrent. That's what's recommended, but the judge could give 60 plus 60 consecutive. And I don't think that would- It benefits the government to have the sort of double layer of protection there. That's for the government's protection, the concurrency. But the point is, is it over 120? The judge can structure it how it wishes. It's recommended. It's told, an advisory statement by the commission says, do it concurrently, give the whole punishment on everything. But obviously that's advisory. If the judge feels strongly, no, I don't want to give you 120 plus 120 concurrent. I want to give you 60 plus 60. That's okay. But if he gives 121 or if he gives 61 plus 60, now we varied over the range. And it's really not about the consecutive concurrent, but it's about how much time have you gotten. And that's just the way that- It's our position that that's just the way it's set up. And I would urge the court to look at 3C. Yes. This discussion you're having with Judge Edwards has been really pretty helpful. But would it be fair for me to say that what your response to him boils down to is that true, the sentencing judge has the authority to sentence consecutively under the statute. That's number one. And it's true that the guidelines are silent on the precise issue we have here, namely where there's more than one supervised release term. But you think that what drives the result here is that the consequence of this, of consecutive sentencing here is completely inconsistent with the purposes of the guidelines, right? That there should be like punishment for like offenses, independent of the prosecutorial the charging decisions of the prosecutors, right? That is definitely, yes, part of it. What do you mean part of it? I thought that was the case. Well, it is, but I also think that it's not entirely silent. If you don't look at- Tell me how, that's- What's not- Let me point to- What do you rely on for the proposition that the district court, what in the guidelines says that our district court has to impose only concurrent sentences when the defendant's serving concurrent terms of supervisory? What exactly is it? Again, my argument isn't really about concurrent consecutive as much as it is that whichever way you do it, how much punishment is the person getting? And for that, I point to 3D 1.2, groups of closely related counts, all counts involving substantially the same harm shall be grouped together into a single group. And so that is telling us that's how we read the table in 7B. Is that about, is that in 7B? Sorry. No, that's in Chapter 3. That's exactly right. Yeah, it's not in 7. It's, that deals with sentence, right? Not violations of supervised release. Well, this is a sentencing as well. I agree it's in Chapter 3, not in Chapter 7, but I think that, I don't know why that wouldn't apply when you have the exact same breach, one single harm, one single conduct. And that's the whole philosophy behind the way the guidelines are set up. Why would it suddenly be different? And if nothing else, I would also point to the rule of lenity. If it's, if it's, there's some silence here and it's not clear, I would think we would err on the side of making the total punishment, the number in the table, not the number in the table times the number of counts, which could end up with a ridiculous number. You know, if you had 20 counts here, you would have a 240 month maximum. And admittedly, there's a statutory maximum that would be quite high, just like there is in my drug and gun example. The drugs might have a statutory maximum of 40 years and the gun would have 10 years. So you would have a 50 year statutory max, but you just don't worry for guideline purposes. We just don't care about that. We just try to figure out what is the range. And then, as I said, the commission encourages you to do them concurrently. And as you know, and that's a, frankly, a protection for the government. But if they wanted to go against that advice and do it consecutively, they could. The question is just don't go over the top of the range without a reason. That's what I'm saying. All right. Any more questions? All right. Then we'll hear from Ms. Kalou. Good morning, and may it please the court, Chim Namso Kalou on behalf of the United States. We would ask this court to affirm the district court's judgment in this case. The district court imposed a within guideline sentence for each of appellant's individual terms of supervised release. That is, upon revoking both terms of supervised release, the court appropriately looked to the guidelines for each individual term. And as appellant has agreed, the court had the statutory authority to do so. And the government also believes that the guidelines suggest that the court, in fact, contemplate that the court can sentence consecutively upon revocation of concurrent terms of supervised release for a couple of different reasons. So in the court's discussion with Ms. Wright, there was discussion of the phrase total punishment and the idea that a sentence should reflect the total punishment. That phrase comes from Chapter 5 of the guidelines, which addresses the imposition of the original sentence in the case. And there's also reference to Chapter 3 of the guidelines. The phrase total punishment does not appear anywhere in Chapter 7 of the guidelines. And in fact, we would argue that the revocation table in 7B1.4A suggests that courts should be looking on an offense-by-offense basis. In particular, under the A2 of that revocation table, there is a reference to a different set of guidelines for a Class A felony. In other words, we don't think it would make sense for the revocation table to make reference to different types of offenses if the district court were not meant to affirmatively look on an offense-by-offense basis. I just want to ask you a question. You referred to the revocation table in Section 7B1.4. You cited that, but there's only two variables in that table, the grade of the violation and the criminal history category. It doesn't say anything about the number of violations at all of the supervisory lease terms. That's all it says. That's all you look at. It doesn't say anything about the number of underlying supervisory lease terms that the person served. It doesn't specifically, Your Honor. It clearly doesn't. Isn't that completely inconsistent with the argument you're making that the district court should take account of a third factor, one that's not listed in that table? The table suggests that the court should look offense-by-offense in that it references... It does not suggest. Those are the only two factors. The table... You're supposed to look at the table. They put in the information. There's two factors, and they calculate the sentence. You want them to take account of a third one, the number of supervisory lease terms that the defendant is serving. The table also makes reference to different classes of felonies. It does make reference to the class A felony in the table. In the paragraph that follows the table, makes reference to statutory maximum and minimum terms of imprisonment for different counts, which necessarily would require the court to look at each individual offense. The offenses each have a term of supervised release. But this is only to determine the grade. Well, we would argue that, but the fact that the court must look at those factors means that the court is necessarily... Yeah, but I think what Judge Tatel is... And I mean, this is the frailty in your position. It's only to determine the grade. You're only looking at grade in history to come up with total penalty. And it seems... And what we're... In preparing this case, you have to do to think that you have... The grid gives you a total penalty and you look at everything that's there, but you're focusing on grade and history and you come up with a total penalty. There's nothing that suggests you should now multiply the number of counts. See, that's the problem with your position. There's nothing that endorses that view that says, okay, now that you get the figure, multiply the number of counts and then spread it out any way you want. That's not what it says. And just to add to Judge Edward's question, the result it produces is completely inconsistent with the purposes of the guidelines. And since there's an ambiguity here, we all concede, I think, that there's an ambiguity here, but why would the government be insisting on this position when it's so completely inconsistent with the purposes of the guideline? I mean, it is, right? It's... For a criminal violation, we calculate one violation grade and we do the same thing here. It's just... I don't see why it makes... I get the ambiguity, but could you just articulate for this panel, what's the reason for taking the position you are when it's so inconsistent with the purposes of the guidelines? I think that the position the government is taking is not entirely, if at all, inconsistent with the purposes of the guidelines. In this context, in the Chapter 7 context, a district court is looking at violations of supervised release. In other words, the defendant's violation of the strictures that the district court... I'm sorry to interrupt you, but I'd really like you to focus on the purpose here. And let's focus on it by looking at the facts of Campbell, the Ninth Circuit case. Okay. So, the defendant there admitted to one violation, right? He's failing to keep in contact with his probation officer, something like that, right? The court employees imposed 35 consecutive sentences for each term of supervised release, which was a longer sentence than he served on his underlying conviction. And the guidelines would have produced 351 months. I mean, just explain to us why that makes sense. Why that makes sense? Why does... Particularly when a defendant with only one term of supervised release in that case who violated by committing at 35 acts would face only one single month sentence. What... Why that makes sense? That's so inconsistent with the purposes of the guidelines. And I'm sorry, but if you look at all the cases you cite, I think I looked at them, all the other circuit cases, they all focus on the statute. They don't get into the guidelines. And that's what Judge Edwards and I are asking you. In Chapter 7 of... Because Chapter 7 is looking at supervised release and not at the conduct, not at criminal conduct, there's a wider range of conduct that could lead to a violation, which is consistent with having a wider range of potential penalty for the violation of the statute. There could be, on the one hand, a violation for, as the court referenced, failing to check in with a probation officer, all the way to a violation that results from the commission of a crime of violence. But wait, don't you come up with... Don't you look at all that to come up with the grade? Exactly. See, I mean, that's where your position really is solved because, yeah, it would have occurred to me that one way you could do this, well, there are different supervised release and there are different possible violations here, so we want to take them one by one. But then why create a grid that's based on grade and history to get one penalty result? And I would counter that, Your Honor, with the fact that Chapter 7 does not set forth the same sorts of strictures and rules that are found in Chapter 5 in the original sentencing context. We know that. We understand that. Your point about that is well taken. We're focusing on a different question, and I still haven't heard an answer as to why we would approve a process that produces a result just totally inconsistent with the guidelines are designed to do. It just... I mean... And this grade and history grid gives you the highest number, right? The highest number in terms of... The total penalty, yeah. It doesn't use the phrase total penalty. It does... I understand, but that's a conceptual. It works for me, so you just have to indulge me on that, it's coming up at the high number, right? On an offense-by-offense basis. Yeah, but it's taking... You're getting one... You're taking grade and history to come up with one total penalty number. Now, the difference here is you're saying you can apply that to each count,  and you've already considered all the counts to come up with the total penalty number. Having done that, now why would you put that number and use it to multiply every... Conceptually, it's just hard to comprehend. And the way that... Apparently, the way the circuits that have gone the way you prefer... The reason they're going the way you're going is because they simply, as Judge Tatel says, they're focusing only on the statute. And they're saying a judge has the authority to sentence consecutively or concurrently. And then the answer to that is, so what? And Your Honor, I would point the court to the Fifth Circuit decision in Bagehot, which does to not a great extent, but does discuss the guidelines and look specifically to Chapter 7. And in the introductory commentary to Chapter 7 and looking at Paragraph 3B, the commission does say that although... I'm quoting, although the commission found desirable several aspects of their second option that provided for a detailed revocation guideline system, similar to that applied at the initial sentencing, extensive testing proved it to be impractical. And so our position is that in the context of the supervised release and a revocation of supervised release, the district court should, and we believe that the Chapter 7 of the guidelines contemplates the district court does in fact have a wider range of tools in its toolbox, if you will, to determine the appropriate sentence. And that includes imposing consecutive sentences upon the revocation of concurrent terms of supervised release. Does the district court have the authority with an explanation to go outside the guideline range? If the court had gone outside of the guideline range, certainly that we would agree, but in this case, the court did not do that. No, no, no. I understand. Well, that's the fight. I mean, that's part of the issue here, but isn't that the answer to you? The court has the authority to go out of guideline range, doing it the way we're suggesting maybe it should have been done. So if there are particular current concerns in a case and the court feels the grid's not picking it all up, and I'm going to grade it up even more, you can still achieve what you want by doing it the way we're suggesting that it's a total penalty. And no matter how many release, you don't multiply by every count. You're still going to have the district court having some control over this if it's a special case, right? I would agree with that, Your Honor, if the court were going outside of the guidelines range. In this case, for example. But what I'm saying is the court can answer your concern by going outside of the guideline range, but you get the total penalty, and then you got to justify anything that's beyond the guideline range. And then you sentence. And we would just argue that the court stayed within the guidelines here. It's just the court was looking on an offense by offense basis for that guideline. Okay. All right. Any more questions? Nope. Yeah. I have one more question. Sorry. Setting aside the fact that I still haven't heard a policy argument for your position, I'm curious to know why you think that the guidelines are not sufficiently clear here. It says where there is more than one violation of the guidelines of supervision, the grade of the violation is determined by the violation having the most serious offense. True, it doesn't say anything about what you do where there's multiple supervised release, but what difference does that make? This is the rule. You don't take account of the number of supervised release terms. All you look at is the number of ... All you look at is the most serious of the violations, and that's it. And the offense- And history. Criminal history. That's it. I actually, now that I look at this, don't see the ambiguity. True, it doesn't speak to the precise issue, but statutes aren't ambiguous just because they don't speak to the precise issue. If the language covers it, that's good enough for us. And also, you know, we have lots of cases which say, yes, district courts have flexibility under the statutes, but they still have to follow the guidelines, right? Yes, Your Honor. And I apologize. Go on. No, go ahead. I didn't mean to ... I want to hear your answer to my question. Sorry. I just ... With respect to the court's question about a policy argument, I would just reiterate that the supervised release context, I think, is different from the original sentencing context where you're necessarily talking about criminal conduct versus supervised release. You could be anything from a technical violation to criminal conduct. And I think that that's just your response. As Judge Edwards points out, you take that into account by picking the worst one. You took the worst one. The introductory portion of Chapter 7 does also direct the court to ... It suggests that the court should look, to some extent, to the conduct as well. And so, we think that there is some space for the court to, as it's statutorily permitted to do, stack terms of imprisonment upon revoking supervised release. All right. If there are no more questions, Ms. Wright, why don't you take two minutes? Thank you. I didn't want to neglect to mention In re Sealed Case, which I think is quite relevant here because, in that case, this court characterized the 18-month revocation sentence as being twice the guidelines maximum, quote unquote, of three to nine months, even though there were four separate terms of supervised release there. And under the government's theory, the range there would have been three to 36 months, and the 18 would have been within it. The problem for you is Smith doesn't really address the issue. They have a picture that works for you, but they're not really addressing the issue. In re Sealed Case? In re Sealed. I'm sorry. Yes. Yeah, yeah. Excuse me. Well, they're not ... They're not addressing the legal issue. Well, they're ... I mean, they're saying that this is the guideline range, and you went over the guideline range without giving a reason, and it's plain error, and we're sending it back, which is exactly what we're saying here. I mean, the government argues against treating the two counts as a group with a total range of six to 12, but they don't acknowledge the problems with ... They would suggest that the total range here was six to 24, because you could either do it concurrent or consecutive in their view. And so that sounds reasonable, six to 24, when you have two counts, but it quickly balloons into an utterly useless guideline range with 10 counts, it would be six to 120 months. And that's not a guideline range. The commission would never create a scheme like that. And I guess I would say that it's implicit within the chapter seven, that it's written against the background of the way the commission has set things up. And the government's approach would create disparities between similarly situated defendants who've done the exact same breach of trust, committed the exact same harm, but just because one mailed 20 letters to further their scheme, and one mailed one letter, the plea deal was struck a particular way. And so there's one count or 20 counts that people are treated entirely differently guidelines wise. And again, I emphasize that the court would be free to vary. And I suspect that the reason some of the other circuits don't discuss this, it would apparently was not raised was likely because they wasn't the situation sort of unique here, because the judge didn't give any reason, because the judge explicitly said, I don't want to vary. I'm not varying. So that's why it's so clear here that there was no adequate justification, whereas in these other cases, it's possible the judge was saying something that, you know, deterred defense counsel from attempting to make the argument I'm making. And they went for these arguments that were much more tied to like the fact that the terms are consecutive and the statutory arguments that we're just not making here. Mr. Howard, in your view, how do you see the district court as retaining meaningful authority to pick consecutive versus a concurrent, if the court is bound to apply the sentencing number the way you say as opposed to the way the court did in this case? I guess I would say that the important thing is that at the end of the day, the total punishment is either within the range or justified out the range, how the judge chops it up, whether it builds that high end sentence by stacking two small sentences, or does it the way the guidelines generally advise you to do it, which is to put the total on everything concurrently. Really, it's just the judges. No, no, I'm just trying to understand what do you think the judge has when you say the judge has a right still has the right to sentence consecutively. So you're saying the judge is stuck with that total number, and then can divide it in the accounts any way the judge wants to, but it cannot exceed the total. That's what I'm saying. Court could do that. I don't know why a court would do that. It's safer, you know, to do it concurrently. And that's what Edge Tittle, did you have a question? No, actually, Judge Edwards asked the question. All right. All right. Thank you, then. Madam Clerk, if you would call the next case.
judges: Henderson, Tatel, Edwards